**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAWN A. DANIEL,**

                          **Plaintiff,**                    **1:13-cv-118**
                                                            **(GLS/RFT)**

              **v.**

**AUTOZONE, INC. et al.,**

                          **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Cooper, Erving Law Firm                  SARAH J. BURGER, ESQ.
Saratoga Office
63 Putnam Street, Suite 202
Saratoga Springs, NY 12866

**FOR THE DEFENDANTS:**
_AutoZone, Inc.; AutoZoners, LLC; Todd_
_Bush; Heath H. Savage_
Bond, Schoeneck Law Firm                 MICHAEL D. BILLOK, ESQ.
111 Washington Avenue
Albany, NY 12210-2280

_Ricky V. Martin_
Ricky V. Martin
Pro Se
2055 Route 40
Schaghticoke, NY 12154

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Dawn A. Daniel commenced this action against defendants AutoZone, Inc., AutoZoners, LLC, Todd Bush, Heath H. Savage (hereinafter "defendants"), and defendant *pro se* Ricky V. Martin, alleging violations of Title VII of the Civil Rights Act of 1964,[1] 42 U.S.C. § 1981, and the New York State Human Rights Law[2] for discrimination based on race and gender and retaliation. (*See generally* Am. Compl., Dkt. No. 23.) Pending before the court is defendants' motion for summary judgment.[3] (Dkt. No. 41.) For the reasons that follow, the motion is granted in part and denied in part.

## II. Background[4]

---

[1] *See* 42 U.S.C. §§ 2000e–2000e-17.

[2] *See* N.Y. Exec. Law §§ 290-301.

[3] The pending motion for summary judgment has been filed on behalf of all defendants except Martin. (Dkt. No. 43, Attach. 1 at 2 n.2.) Notably, Martin has not filed an answer to the amended complaint, nor has he otherwise appeared in this action since appearing at the initial Rule 16 conference, as reflected by the court's May 1, 2013 text minute entry, which predated the filing of the operative pleading in this case.

[4] Unless otherwise noted, the facts are not in dispute. Further, as highlighted by defendants, (Dkt. No. 48 at 3-8), Daniel's failure to comply with Local Rule 7.1(a)(3) by "set[ting] forth a specific citation to the record where the factual issue arises" in many of her conclusory denials of facts asserted in defendants' statement of material facts, (*compare* Dkt. No. 43, *with* Dkt. No. 46, Attach. 1), is not without consequences. Accordingly, defendants'

Daniel, an African-American female, began her employment with AutoZoners as a sales associate at an AutoZone store in Bellmore, New York in June 2008. (Defs.' Statement of Material Facts (SMF) ¶¶ 1, 4, 8, Dkt. No. 43.) After requesting a transfer, she began working at the AutoZone store in Troy, New York in July 2010. (*Id.* ¶¶ 11, 13.) One of her coworkers throughout her employment at that store was Martin, a Caucasian male. (*Id.* ¶¶ 7, 17.) Savage, the store manager for the Troy location, was Daniel's direct supervisor on a daily basis, (*id.* ¶ 15), and Bush, the district manager for the region which included the Troy store, was responsible for, among other things, personnel decisions, including terminations, (*id.* ¶ 16).

According to Daniel, within a short time of transferring to the Troy location and commencing her employment there, several coworkers began subjecting her to a litany of harassing conduct and racially-motivated comments. (Dkt. No. 41, Attach. 2 at 10.) Several AutoZone employees engaged in this harassment, including Martin. (*Id.*) Daniel maintains that on numerous occasions she was called names, including "black ass,"

<hr>

properly supported and uncontroverted facts are deemed admitted.

"Medusa," "Nucka,"[5] "duber," and "idiot," was told that her "kind isn't welcome here," was threatened with physical violence, and was told by one coworker that "black people hang at [his] house . . . in trees." (*Id.* at 9-10, 12, 14, 27-29.) Daniel claims that she consistently complained about this harassment to Savage, who took no action to stop it. (*Id.* at 11-12.) According to Daniel, she complained "so many times that [Savage] would say that all you do is complain," and would tell her to "shut [her] trap and learn how to keep [her] mouth closed sometimes," (*id.* at 12), although Savage denies ever receiving any such complaints, (Dkt. No. 41, Attach. 8 ¶¶ 19, 29-32). Daniel also claims that Bush witnessed the conduct first-hand during his occasional visits to the store, (Dkt. No. 41, Attach. 2 at 12), though Bush denies ever "witness[ing] any AutoZoners employee mistreat Daniel in any way during [his] periodic visits to the Troy AutoZone store," (Dkt. No. 41, Attach. 6 ¶ 19).

In early 2012, Daniel took a leave of absence from work as a result of a health issue. (Defs.' SMF ¶ 36.) Upon her return to work, Daniel noted that her relationship with Martin deteriorated, as he continued to be rude to

---

[5] Daniel understood this term to be another word for "nigger." (Dkt. No. 41, Attach. 3 at 7.)

her, cursed at her in front of customers and managers, and "started putting his hands on [her] around that time." (*Id.* ¶¶ 39-40; Dkt. No. 41, Attach. 2 at 30.) On May 2, 2012, while at work, Daniel and Martin had a physical altercation. (Defs.' SMF ¶¶ 41-42.) The parties dispute exactly what happened during this confrontation. Defendants assert that Daniel "hit[ ] Martin on the back of his head," because "Martin had made a comment about Daniel's husband that she found offensive." (*Id.* ¶¶ 42-43.) Daniel contends that she merely "tap[ped] him" on the back of the head, (Dkt. No. 41, Attach. 2 at 46), or "brush[ed her] three fingers across the back of his neck," (Dkt. No. 42, Attach. 2 at 3). At that point, Martin then threw a gas can at Daniel, which hit her in the leg. (Defs.' SMF ¶ 45; Pl.'s SMF ¶ 166, Dkt. No. 46, Attach. 1 at 12-18.)

Daniel did not immediately report the incident to her employer, her stated reason being that she "knew it would lead to termination for both" her and Martin. (Defs.' SMF ¶¶ 49-50; Dkt. No. 41, Attach. 2 at 48.) The next day, while working with Bush at a different location, Martin reported the incident to Bush, who then relayed notice of the incident to Hope Reitz, a Regional Human Resources Manager. (Defs.' SMF ¶¶ 51-52; Dkt. No. 41, Attach. 6 ¶¶ 5, 8.) Reitz subsequently began an investigation, during

which she interviewed several individuals involved in the incident, including both Martin and Daniel, as well as other employees who may have witnessed the events.  (Defs.' SMF ¶¶ 53-87; Dkt. No. 41, Attach. 6 ¶¶ 9-10; Dkt. No. 42, Attachs. 1-9.)  Upon completion of the investigation, Reitz recommended that both Martin and Daniel be terminated for violating AutoZoners' workplace violence policy.  (Dkt. No. 41, Attach. 6 ¶ 12; Dkt. No. 42, Attach. 19.)  This recommendation was adopted by Bush and his supervisor, Regional Manager David Strange, and in June 2012, both Martin and Daniel were terminated within a day of one another.  (Defs.' SMF ¶¶ 91, 93-94; Dkt. No. 41, Attach. 6 ¶¶ 13-15.)

Daniel subsequently commenced this action with the filing of a complaint on January 31, 2013.  (Compl., Dkt. No. 1.)  Pursuant to the parties' stipulation, (Dkt. No. 22), she filed an amended complaint on June 14, 2013, (Am. Compl.), and defendants subsequently filed their now-pending motion for summary judgment, (Dkt. No. 41).

## III.  **Standard of Review**

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. Discrimination[6]

Turning to the merits of Daniel's claims, defendants[7] argue that

---

[6] At the outset, the court notes that, in her response to defendants' motion, Daniel argues that two witness declarations submitted by defendants in connection with their motion "should be stricken and disregarded by the court" because defendants "failed to disclose" the two individuals "as potential witnesses with discoverable information," in violation of Federal Rule of Civil Procedure 26. (Dkt. No. 46 at 9-10.) Daniel's request is denied.

Generally, otherwise reliable and relevant testimony or evidence may still be inadmissible if it was not properly and timely disclosed pursuant to Federal Rule of Civil Procedure 26. *See Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 85-86 (2d Cir. 2008); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."). Rule 26(e) requires a party to supplement its discovery disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A).

As defendants point out in response to Daniel's arguments, (Dkt. No. 48 at 1-3), her assertion that defendants entirely failed to disclose both Joseph Bartolotti and Tyranney Stevenson during discovery is not entirely forthcoming. Although defendants did not specifically identify Bartolotti or Stevenson in their initial Rule 26 disclosures as "individuals likely to have discoverable information that defendants may use to support their defenses," (Dkt. No. 46, Attach. 12 at 2-3), which is the only document relied upon by Daniel as support for her argument, (Dkt. No. 46 at 9), defendants later served responses to Daniel's interrogatories, which supplemented their initial disclosures and did specifically name both Bartolotti and Stevenson, (Dkt. No. 48, Attach. 2 at 4-5, 8). Therefore, Daniel "has . . . otherwise been made known [of them] during the discovery process," Fed. R. Civ. P. 26(e)(1)(A), and, accordingly, to the extent Daniel seeks to strike the declarations of Bartolotti and Stevenson, that request is denied.

[7] The court notes that defendants seek dismissal of the entity AutoZone, Inc., as it "is not the employer of personnel who work at AutoZone stores," and, thus, is the improper party to sue in this employment discrimination action. (Dkt. No. 43, Attach. 1 at 2 n.1.) Daniel has neither disputed this fact, (Defs.' SMF ¶ 4), nor addressed this issue in her response to defendants' motion, and, accordingly, all claims against AutoZone, Inc. are dismissed, and the Clerk is directed to terminate it as a party to this action.

Daniel was terminated for a legitimate, non-discriminatory reason—namely, her violation of the company's workplace violence policy—and that she cannot demonstrate that this stated reason is a pretext for discrimination. (Dkt. No. 43, Attach. 1 at 12-16.)  In response, Daniel briefly states that, based on the record as a whole, a jury could conclude that her violation of company policy was not the sole reason for her termination, and that she was, in fact, terminated for discriminatory reasons.  (Dkt. No. 46 at 9.)  The court agrees with defendants.

Under Title VII,[8] it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting rules,

---

[8] Title VII claims and claims of employment discrimination under the New York State Human Rights Law are governed by the same legal standards. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996). Similarly, "[b]oth the Supreme Court and Second Circuit have treated the substantive issues arising under Title VII and § 1981 identically," *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 527 (S.D.N.Y. 2002) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998)), *aff'd* 76 F. App'x 366 (2d Cir. 2003).  Thus, Daniel's claims pursuant to 42 U.S.C. § 1981 and the Human Rights Law survive or fail on the same basis as her analogous claims under Title VII, with the exception of her hostile work environment claims, as discussed further below.

which place upon the plaintiff the initial burden of making out a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To satisfy this initial burden, the plaintiff "'must show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'" *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

"A plaintiff's establishment of a *prima facie* case gives rise to a presumption of unlawful discrimination that shifts the burden of production to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks and citations omitted). If the defendant comes forward with a legitimate, nondiscriminatory reason for the challenged employment action, the presumption of discrimination drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing*

*Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).

Ultimately, once the burden shifts back to the plaintiff, she must show, "without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination." *Holcomb*, 521 F.3d at 138. The plaintiff must demonstrate "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). As further explained by the Supreme Court, to demonstrate pretext, a plaintiff must show "*both* that the [employer's offered] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see Fisher v. Vassar Coll.*, 70 F.3d 1420, 1433 (2d Cir. 1995). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *See Holcomb*, 521 F.3d at 137; *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

While defendants "deny that [Daniel] can establish a *prima facie* case," their argument focuses on steps two and three of the burden-shifting analysis: whether defendants had a legitimate, non-discriminatory reason for terminating Daniel and, if so, whether Daniel can demonstrate that this

reason was a pretext for discrimination. (Dkt. No. 43, Attach. 1 at 13 n.3.)

Defendants first argue that Daniel was terminated for a legitimate, non-

discriminatory reason—specifically, her violation of AutoZone's workplace

violence policy—and have supported this assertion with an affidavit from

Bush, who indicates that Daniel was terminated specifically for violating the

store policy. (Dkt. No. 43, Attach. 1 at 13-14; Dkt. No. 41, Attach. 6 ¶¶ 12-

13, 15.) Defendants have also provided reports from Reitz's interviews

with various employees during her investigation, which corroborate her

findings that an altercation did occur between Daniel and Martin. (Dkt. No.

42, Attach. 1 at 2; Dkt. No. 42, Attach. 3 at 2; Dkt. No. 42, Attach. 4 at 3.)

Daniel does not directly refute this stated reason for her termination, and,

tellingly, Daniel herself testified that she did not report the incident between

herself and Martin to her employer because she "knew it would lead to

termination for both" her and Martin. (Dkt. No. 41, Attach. 2 at 48.) Courts

have routinely held that violation of a company policy is a legitimate,

nondiscriminatory basis for termination of an employee. *See Giudice v.*

*Red Robin Int'l, Inc.*, 555 F. App'x 67, 69 (2d Cir. 2014); *Shumway v.*

*United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997); *Pealo v. AAF*

*McQuay, Inc.*, 140 F. Supp. 2d 233, 239-40 (N.D.N.Y. 2001) (finding that

violation of a company's harassment policy constituted a legitimate, nondiscriminatory basis for termination).

Accordingly, the burden shifts to Daniel to demonstrate that this reason is a pretext for race- or gender-based discrimination.  In her memorandum, Daniel offers almost no response to defendants' arguments on her discriminatory termination claim.  Without pointing to any evidence in particular, she merely states that "[t]here is substantial evidence that casts doubt" on defendants' stated reason for her termination, and that ultimately a jury should "consider the evidence of discrimination throughout [her] employment" in determining whether discriminatory animus was the true motivation for her termination.  (Dkt. No. 46 at 9.)

This unsupported speculation is simply insufficient to defeat defendants' argument for summary judgment on Daniel's discrimination claim.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (finding that a plaintiff must rebut evidence of legitimate, nondiscriminatory reasons for dismissal with specific evidence tending to show not only that those reasons were a pretext, but that unlawful discrimination was the real reason for the employment decision).  It is well settled that "'conclusory allegations or unsubstantiated speculation' [are in]sufficient to raise a

triable issue of fact as to whether . . . discriminatory animus" played a role in an adverse employment action. *DiGirolamo v. MetLife Grp., Inc.*, 494 F. App'x 120, 122 (2d Cir. 2012) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)); *see Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) (finding "purely speculative" assertions of discriminatory animus insufficient to defeat summary judgment). The court also notes "that it has no duty to *sua sponte* sift through the record on a summary judgment motion in search of a factual dispute." *Kidkarndee v. Koenigsmann*, No. 9:12-CV-0502, 2014 WL 1239319, at *5 (N.D.N.Y. Mar. 25, 2014).

Although Daniel asserts that her "evidence [of discriminatory intent] includes all of the discriminatory comments and other disparate treatment," the court struggles to see how the discriminatory comments she discusses elsewhere in her opposition memorandum, which were made entirely by coworkers who are not alleged to have been involved in the decision to terminate her, (Dkt. No. 46 at 6-9), are relevant to the inquiry as to the motive behind her termination. To the contrary, "allegedly discriminatory comments made by a nondecisionmaker are, as a matter of law, insufficient to raise an inference of discrimination." *De la Cruz v. City of*

13

*N.Y.*, 783 F. Supp. 2d 622, 643 (S.D.N.Y. 2011) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring)); *see Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 743 n.6 (7th Cir. 2002) (stating that a plaintiff cannot prove discrimination with statements by nondecisionmakers).  Further, her vague reference to "other disparate treatment," (Dkt. No. 46 at 9), leaves the court guessing as to which treatment she is attempting to invoke.  This claim is particularly suspect in light of the fact that Martin, a Caucasian male, was also terminated as a result of the same incident, (Dkt. No. 41, Attach. 6 ¶¶ 12-14), and defendants' uncontroverted facts showing that several other Caucasian males were terminated for the same reason in recent years, (Dkt. No. 42, Attach. 10 ¶ 30).  Accordingly, because defendants have proffered a legitimate, nondiscriminatory justification for Daniel's termination, and she points to no evidence in the record from which a reasonable juror could conclude that the decision to terminate her was made because of her race or gender, her discrimination claims on this basis are dismissed.

## B.    <u>Retaliation</u>

Defendants next argue that they are entitled to summary judgment on Daniel's retaliation claims because she cannot prove a causal connection

between any protected activity in which she engaged and an adverse employment action.  (Dkt. No. 43, Attach. 1 at 15-16.)  In response, Daniel argues that there is evidence from which a jury could find that she was terminated in retaliation for her complaints of abusive treatment by coworkers.  (Dkt. No. 46 at 7-9.)  The court again agrees with defendants.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [that employee] has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001).  After the plaintiff establishes the foregoing elements, the burden of production shifts to the defendant to show that there were "legitimate, nondiscriminatory" reasons for its actions.  *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001).

Provided that the defendant makes such a showing, the burden again shifts, this time back to the plaintiff, "to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

As limited by their memorandum, defendants argue that there was no causal connection between any purported protected activity by Daniel—her complaints about harassing conduct by coworkers—and her termination. (Dkt. No. 43, Attach. 1 at 15-16.) Simply, Daniel has failed to put forth any evidence demonstrating that anyone involved in the decision to terminate her had knowledge of her complaints of harassing conduct by coworkers. As attested to by Bush, at the conclusion of Reitz's investigation into the altercation between Daniel and Martin, Reitz recommended that both Daniel and Martin be terminated. (Dkt. No. 41, Attach. 6 ¶ 12.) Bush and Strange adopted that recommendation, and Bush consequently terminated Daniel for violating company policy. (*Id.* ¶¶ 13, 15.) Daniel admits that, prior to a conversation she had with Bush during her termination meeting, she had not previously complained to him about her treatment by coworkers. (Defs.' SMF ¶¶ 100, 102.) Daniel makes no assertion that she complained to either Reitz or Strange, or that either of them were

otherwise aware of her complaints of discriminatory treatment at any point prior to her termination.

Although Daniel did testify that she complained to Savage and a coworker, Eric Remington, (Dkt. No. 41, Attach. 2 at 27), and argues that the temporal proximity between her complaints to Savage and the decision to terminate her could create an inference of retaliatory motive, (Dkt. No. 46 at 8-9), there is no argument by Daniel, nor any evidence in the record, that either Savage or Remington were involved in the decision to terminate her. Thus, even assuming these complaints were followed closely in time by her termination, the record remains devoid of any indication that anyone to whom she complained played a role in her termination, or made anyone else aware of her complaints. To the contrary, Daniel affirmatively asserts that Savage did not do anything about her complaints. (Dkt. No. 41, Attach. 2 at 11-12.) Daniel has thus fatally failed to come forth with any evidence that anyone involved in the decision to terminate her was even aware of her protected activity prior to taking any adverse employment action against her, and thus cannot show that she was terminated because of, or in retaliation for, this activity. *See McMenemy*, 241 F.3d at 282-83.

## C.    Hostile Work Environment

With respect to Daniel's hostile work environment claim, defendants argue that she has failed to prove both the objective and the subjective prongs of a hostile work environment cause of action.  (Dkt. No. 43, Attach. 1 at 16-22.)  Specifically, defendants argue that Daniel's own testimony undermines any contention that she found the conduct subjectively abusive, (*id.* at 17-18), and that the record evidence supports a conclusion that the conduct was not sufficiently severe and pervasive to objectively constitute a hostile work environment, (*id.* at 19).  Defendants also assert that Daniel is precluded from maintaining a hostile work environment claim against AutoZoners because she did not avail herself of her employer's established anti-harassment procedures.  (*Id.* at 19-22.)  In response, Daniel mentions various incidents of harassment and argues that they constitute an actionable hostile work environment.  (Dkt. No. 46 at 5-7.)  For the following reasons, defendants' motion for summary judgment on this claim is granted in part and denied in part.

Where a discrimination claim is predicated on the existence of a hostile work environment, the plaintiff must demonstrate that the conduct in question: "(1) is objectively severe or pervasive—that is, creates an

environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's . . . protected characteristic." *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012) (internal quotation marks omitted). In determining whether a hostile work environment claim has been established, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (internal quotation marks and citation omitted).

"Beyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). Where, as here, "an employee is the victim of . . . harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about

the harassment but failed to take appropriate remedial action." *Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004). However, an employer may nonetheless avoid liability via the so-called *Faragher-Ellerth* affirmative defense to such claims, which shields an employer from liability for a hostile work environment if: (1) "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *see Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006). Notably, "[o]ne way for employers to demonstrate that they exercised reasonable care is to show that they had an anti-harassment policy in place." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S. Ct. 2434 (2013).

"Once an employer has satisfied its initial burden of demonstrating that an employee has completely failed to avail herself of the complaint procedure, the burden of production shifts to the employee to come forward with one or more reasons why the employee did not make use of

the procedures." *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir. 2001). "The employer may rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion." *Id.*

As noted above, defendants' argument as to the merits of Daniel's underlying hostile work environment claim is twofold. Defendants argue that summary judgment in their favor is warranted because: (1) Daniel did not subjectively find the workplace to be abusive, as demonstrated by her friendly relationships with several coworkers; and (2) there is record evidence that contradicts Daniel's testimony regarding the objective severity and frequency of offensive comments. (Dkt. No. 43, Attach. 1 at 16-19.) The court finds that there are disputes of material fact as to both prongs of the claim. As to the subjective element, defendants argue, relying on one district court case, that Daniel could not have subjectively found the environment to be hostile, because she "admitted that she was friends with everybody in the store," and "admitted to joking around" with coworkers. (*Id.* at 17-18 (citing *Martinez v. Connecticut, State Library*, 817 F. Supp. 2d 28, 51 (D. Conn. 2011)).) While there is evidence in the record that would support a finding that Daniel at times had a social relationship with some of her colleagues, the court is unpersuaded that this

fact would be incompatible, as a matter of law, with a claim that she subjectively found the alleged verbal abuse and racial comments, if they occurred, to be hostile and unwelcome.  A jury could infer from her testimony regarding the frequency with which she complained about the conduct, (Dkt. No. 41, Attach. 2 at 11-12, 28), or about how it caused her stress, depression, and sleep problems, (Dkt. No. 41, Attach. 3 at 5), for example, that the conduct was subjectively severe and pervasive to her. *See Feingold v. New York*, 366 F.3d 138, 151 (2d Cir. 2004) (noting that "a rational fact-finder could conclude that [the plaintiff] subjectively experienced a hostile work environment" where he "declare[d] in his affidavit that the hostile treatment took a psychological toll on him, causing him to become depressed, to dread going to work, to seek a transfer, and to lose his desire to socialize with people in general").

With respect to the objective prong, to adopt defendants' position would be to make a credibility determination, and credit the testimony of certain witnesses over others, which is improper at the summary judgment stage.  Although defendants note that Remington could only recall a single instance of Daniel complaining to him about racial comments by others, (Dkt. No. 41, Attach. 4 at 23), Daniel points to evidence reflecting more

22

frequent and pervasive incidents of harassment, (*see, e.g.*, Dkt. No. 41, Attach. 2 at 9; Dkt. No. 46, Attach. 8 at 47-48). There is thus a question of fact as to whether Daniel was subjected to a hostile work environment, and defendants are not entitled to summary judgment on this basis.

Despite the questions of fact surrounding the merits of Daniel's underlying hostile work environment claim, defendants further argue that, even if Daniel could establish the existence of a hostile work environment, AutoZoners would be entitled to summary judgment because Daniel unreasonably failed to take advantage of preventative or corrective measures that her employer had in place to deal with such harassment. (Dkt. No. 43, Attach. 1 at 19-22.) Daniel has failed to address this argument in any way in her response to defendants' motion, and, based on the undisputed facts present here, Daniel's hostile work environment claim against her employer, AutoZoners, is dismissed.

The parties do not dispute that AutoZoners had detailed harassment policies in place, including a structure for reporting discrimination or harassment. (Defs.' SMF ¶¶ 30-33; Dkt. No. 42, Attachs. 20, 21.) Pursuant to these policies, employees were encouraged first to bring complaints or concerns to their immediate supervisor, and, if they did not

feel comfortable doing so, or were not satisfied with the supervisor's response, they could direct their complaints to higher levels of management. (Dkt. No. 42, Attach. 20 at 1-2.) AutoZoners had also established an 800-number for reporting harassment to "management, Human Resources or AutoZone Relations." (Dkt. No. 42, Attach. 21.) As stated above, "[o]ne way for employers to demonstrate that they exercised reasonable care is to show that they had an anti-harassment policy in place." *Mack*, 326 F.3d at 128. It is undisputed here that AutoZoners had such a policy in place and that Daniel had received it and was thus aware of it. (Defs.' SMF ¶ 34; Dkt. No. 42, Attach. 18 at 1.) Daniel makes no argument that this policy/procedure was unreasonable, and she concedes that she did not pursue these procedures. (Defs.' SMF ¶ 35.) While Daniel appears to assert that she had a fear of losing her job if she reported the harassment, (Dkt. No. 41, Attach. 2 at 28), "[a] credible fear must be based on more than the employee's subjective belief," *Leopold*, 239 F.3d at 246. "Evidence must be produced to the effect that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Id.* Daniel has produced no such evidence, and she conceded that she was not

aware of any action being taken against other employees in the past for reporting harassment. (Defs.' SMF ¶ 116; Dkt. No. 41, Attach. 2 at 29.) Therefore, Daniel's failure to follow her employer's anti-harassment procedures shields AutoZoners from liability, even assuming the remarks were sufficient to create an actionable hostile work environment. *See McPherson v. NYP Holdings, Inc.*, 227 F. App'x 51, 52 (2d Cir. 2007). Defendants have therefore demonstrated entitlement to the *Faragher-Ellerth* defense, which is not opposed by Daniel, and, accordingly, Daniel's hostile work environment claim, to the extent it is asserted against AutoZoners, is dismissed.

With respect to the individual defendants, Savage and Bush, they argue that dismissal is merited because Daniel cannot show their personal involvement in a hostile work environment, as required by section 1981 and the NYSHRL. (Dkt. No. 43, Attach. 1 at 22-24.) Although Daniel has not addressed these arguments in her response to defendants' motion, defendants have not met their burden of demonstrating their entitlement to judgment as a matter of law on this ground, and thus dismissal of the hostile work environment claim against Savage and Bush pursuant to section 1981 and the NYSHRL is not merited at this juncture.

It is axiomatic that Title VII does not impose liability on individual defendants.  *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012).  Accordingly, Daniel's Title VII claims against Savage and Bush are dismissed.  However, an individual defendant may be liable under section 1981.  "In order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . .  [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) (internal quotation marks and citation omitted).  "Personal involvement, within the meaning of this concept, includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that [such acts] are occurring."  *Id.* (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Here, defendants argue that neither Savage nor Bush were personally involved because Savage neither conducted the investigation into Daniel's altercation with Martin, nor played any role in the decision to terminate her, and because Daniel had never communicated any

complaints of harassing behavior directly to Bush, such that he was not aware of any improper conduct by her coworkers. (Dkt. No. 43, Attach. 1 at 22-24.) However, Daniel has proffered evidence from which the factfinder could conclude that both Savage and Bush knew of the allegedly hostile work environment, yet "fail[ed] to take action upon receiving [this] information," *Patterson*, 375 F.3d at 229, and there is thus a question of fact that requires resolution by a jury. By way of example, Daniel testified that she complained to Savage "about being called a black ass" nearly "every time that [she] worked with [him]," and that she complained "so many times that [Savage] would say that all [she] do[es] is complain," and urged her to "keep [her] mouth closed." (Dkt. No. 41, Attach. 2 at 11-12.) Daniel further testified that she often complained to Savage about being told her "kind is not welcome here" and about being called other racially-charged names. (*Id.* at 12-14.) Savage denied ever "receiv[ing] reports or complaints that [racist] remarks were being made," and affirmatively stated that "Daniel never complained to [him] about any mistreatment by other employees during the course of her employment." (Dkt. No. 41, Attach. 8 ¶¶ 19, 32.)

Similarly, while defendants argue that Bush first became aware of the

purported abuse of Daniel during the meeting at which she was terminated because that was the first time she had complained directly to him, (Dkt. No. 43, Attach. 1 at 23; Defs.' SMF ¶¶ 100-02), Daniel has testified that Bush witnessed the behavior and heard the derogatory comments first-hand on the occasions when he was in the store, (Dkt. No. 41, Attach. 2 at 12). Bush himself denies ever "witness[ing] any . . . employee mistreat Daniel in any way during [his] periodic visits to the . . . store." (Dkt. No. 41, Attach. 6 ¶ 19.) The resolution of these disputed facts is necessary in order to determine whether Savage and Bush were aware of a possible hostile work environment yet failed to act, and, thus, whether they were personally involved for purposes of section 1981. For this reason, defendants' motion is denied to the extent it seeks dismissal of Daniel's hostile work environment claim against Savage and Bush under section 1981 and the NYSHRL.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 41) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**DENIED** with respect to her hostile work environment claims

28

against Savage and Bush pursuant to section 1981 and the NYSHRL, and

**GRANTED** in all other respects, and Daniel's claims of discrimination and retaliation, as well as her hostile work environment claim against AutoZoners, LLC only, and her Title VII claims against Savage and Bush, are **DISMISSED**; and it is further

**ORDERED** that the Clerk terminate AutoZoners, LLC as a party to this action; and it is further

**ORDERED** that all claims against AutoZone, Inc. are **DISMISSED**, and the Clerk is directed to terminate it as a party to this action; and it is further

**ORDERED** that this case is trial ready and the Clerk shall issue a trial scheduling order in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 6, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court